38 P.3d 614

STATE of Idaho, Plaintiff–Respondent,

v.

Willard Novie BAKER, Defendant–Appellant.

No. 27499.

Supreme Court of Idaho,
Boise, November 2001 Term.

Dec. 26, 2001.

Molley J. Huskey, Interim State Appellate Public Defender; Sara B. Thomas, Deputy State Appellate Public Defender, Boise, for appellant. Sara B. Thomas argued.

Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

EISMANN, Justice.

Willard Baker appeals his sentence for vehicular manslaughter. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

On July 15, 1999, at about 11:30 p.m., the defendant Willard Baker took Bobbie Jean Hess for a ride in his Chevrolet Camaro along Blue Lakes Boulevard in Twin Falls, Idaho. The boulevard was a five-lane road, with two northbound and two southbound lanes, as well as a center turn lane. The posted speed limit was 35 miles per hour. Baker began drag racing a Pontiac Trans Am down the boulevard. Baker was in the right-hand, northbound lane, and the Trans Am was in the left-hand, northbound lane. As they approached a small pickup in the left-hand lane, the Trans Am slowed but Baker continued at a speed estimated to be 97 miles per hour. As Baker was passing the small pickup on its right, he lost control of the Camaro, and it began to spin counter-clockwise. The Camaro crossed the left-hand lane in front of the small pickup and then slid sideways into the rear of a full-sized pickup that was stopped in the center turn lane. The collision caused extensive damage to the passenger side of the Camaro, pinning Miss Hess in the vehicle.

Once the Camaro came to a stop, Baker got out of the driver's side door, but did not attempt to assist Miss Hess or check upon her condition. After she was extricated from the Camaro, she was transported to the hospital, where she was pronounced dead. Baker told the police investigating the accident that Miss Hess had been driving when the accident occurred. A blood test revealed that Baker was intoxicated with a BAC of .08 and that he had recently used marijuana.

The State charged Baker with vehicular manslaughter. Baker ultimately waived his right to a preliminary hearing and pled guilty at his arraignment in district court. The district court sentenced him to a maximum sentence of ten years fixed in the custody of the Idaho Board of Correction, a $10,000 fine, a $5,000 civil penalty, and a lifetime suspension of his driving privileges. Baker appealed his sentence.

■ His appeal was initially heard by the Court of Appeals. It affirmed his sentence in an unpublished opinion. We then granted Baker's petition for review. In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decisions of the trial court. *Humberger v. Humberger*, 134 Idaho 39, 995 P.2d 809 (2000).

## II. ANALYSIS

■ Baker contends that the sentence imposed by the district court was excessive. When reviewing whether a sentence is excessive, we review all the facts and circumstances in the case and focus on whether the trial court abused its discretion in fixing the sentence. *State v. Zaitseva*, 135 Idaho 11, 13 P.3d 338 (2000). The four objectives of sentencing are: (1) the protection of society, (2) the deterrence of crime both generally and specifically, (3) the possibility of rehabilitation, and (4) punishment or retribution for wrongdoing. *State v. Zaitseva*, 135 Idaho 11, 13 P.3d 338 (2000). Where a sentence is within the statutory limits, the appellant bears the burden of demonstrating that it is a clear abuse of discretion. *State v. Lundquist*, 134 Idaho 831, 11 P.3d 27 (2000). To constitute an abuse of discretion, the sentence must be shown to be excessive under any reasonable view of the facts. *Id.* A sentence is reasonable if at the time of imposition it appears necessary to achieve the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to the given case. *Id.*

■ Baker first contends that his sentence to incarceration for a fixed period of ten years is excessive. He argues that he expressed genuine remorse for causing the death of Miss Hess, that he had a long history of substance abuse, and that just prior to the accident he had been attempting to gain control of his substance abuse.

Baker was 25 years of age at the time of this offense. He has an extensive juvenile record beginning in 1982. His juvenile offenses include two petit thefts, two charges of joyriding, an escape, six charges of grand theft, one charge each of second, third, and fourth degree arson, and two burglaries. He also committed the traffic offenses of failing to obey a traffic control signal and reckless driving. In 1988 Baker was committed to the custody of the Idaho Department of Health and Welfare, and at some point he was placed at the Youth Services Center in St. Anthony.

In 1991 at the age of 17, Baker was waived into adult court on charges of petit theft, battery, grand theft, and burglary. On February 7, 1992, he was placed on probation for the two felonies. One month later a probation violation was filed alleging that he had failed to report as scheduled on six separate occasions. One month after that, a second report of violation was filed alleging that Baker was arrested in Reno, Nevada, with a stolen vehicle, stolen credit cards, and a stolen shotgun. The court revoked Baker's probation, but retained jurisdiction for 180 days. Following an unfavorable report from the retained jurisdiction program, the district court relinquished jurisdiction, and Baker began serving his five-year sentence.

Baker was paroled in 1994. While on parole, Baker committed the traffic offenses of leaving the scene of a damage accident, driving while suspended, and speeding. He also failed to abide by other conditions of parole. His parole was revoked, and he returned to prison. He was paroled again in 1996, but his parole was again revoked. He served the remainder of his sentence and was released on October 1, 1997. While in prison, Baker was disciplined for several infractions of the rules. After his release, he committed the traffic offenses of failing to stop at a stop sign, driving while suspended, and driving while under the influence of alcohol. He also

admits that he sold controlled substances to support himself.

Baker told the presentence investigator that he began experimenting with alcohol and drugs when he was 12 or 13 years of age, and that he has used marijuana, cocaine, methamphetamine, LSD and heroine. He stated that he used marijuana and methamphetamine almost daily while in prison, and continued using them upon his release. Baker said that he did not enjoy drinking alcohol, however, and rarely consumed it to the point of intoxication.

When sentencing Baker, the district court stated as follows:

> For you, Mr. Baker, the record reflects that even with the maximum sentence you're going to be—still have the opportunity to make something out of your life. That might be possible. I don't know. Your record indicates that the chances are slim. But if your letter [1] means anything, if there is any honesty in it at all, when you finish the sentence that I am going to pronounce, you will still have an opportunity to do what Miss Hess will never have an opportunity to do, and that is have a life of her choosing.

> The record reflects that you have gone through various periods of juvenile matters. You've gone through probation. You've gone through a retained jurisdiction program, which you also failed to complete. You went to the Idaho State Penitentiary and you were paroled not once, but twice. And according to the report, you failed both of those parole situations and served out your sentence.

> The court sees no legitimate basis for belief that you could be successful on probation or on parole. And therefore, I reject any request that would suggest that there is a possibility that you would be out in our society in less than the time allowed by law. .

---

1. In a six-page letter to the judge, Baker stated that he was sincerely sorry for what he had done; that he now has a desire to change his life; that he wants to help juvenile offenders so that they do not make the same mistakes he has; that he has been attending Alcoholics Anonymous and Narcotics Anonymous meetings; that he has investigated and will pursue substance abuse treatment programs; that his family supports him; that he will do whatever it takes to stay clean, live a productive life, and make better choices in the future; and that he takes full responsibility for the death of Miss Hess.

The weight to be given to Baker's expressions of remorse and his substance abuse was for the district court to determine. Considering Baker's prior record and the circumstances of this offense, Baker has failed to show that the district court abused its discretion in sentencing him to a fixed period of ten years incarceration.

Baker next contends that the lifetime suspension of his driving privileges was unreasonable. Idaho Code § 18–4007(3)(d) provides that in addition to imprisonment and/or a fine, a person convicted of vehicular manslaughter may have his driver's license "suspended for a time determined by the court." Baker first argues that the use of the word "suspended" indicates that the legislature intended a temporary loss of driving privileges, not a permanent loss. When questioned during oral argument, however, Baker's counsel was unable to state what the maximum permissible suspension under the statute would be. Baker's counsel admitted that the statute would permit a 99–year suspension. Obviously, a 99–year suspension would be equivalent to a lifetime suspension.

When it amended Idaho Code § 18–4007 to add a provision allowing the court to suspend the driving privileges of someone convicted of vehicular manslaughter, the legislature provided that the suspension would be "for a time determined by the court." The legislature did not limit the length of that suspension. Therefore, the statute permits a lifetime suspension of driving privileges.

Baker next argues that the lifetime suspension was unreasonable under the facts of this case. He argues, "Without a driver's license, Mr. Baker cannot expect to ever engage in a normal lifestyle or participate in many ordinary activities." As the district court told Baker at sentencing, however, "[Y]ou will still have an opportunity to do what Miss Hess will never have an opportunity to do, and that is have a life of her choosing." Baker also contends that the lack of a driver's license will inhibit his chances for rehabilitation. The district court did not abuse its discretion in not giving more weight to the factor of rehabilitation.

Baker next argues that the district court abused its discretion in imposing fines totaling $15,000. The district court imposed the maximum fine of $10,000 for vehicular manslaughter and the maximum fine of $5,000 under Idaho Code § 19–5307. The latter fine operates as a civil judgment in favor of the family of Miss Hess. Baker argues that the fines are excessive because it will take him over a year to pay them. He has failed to show that the district court abused its discretion when imposing the fines.

Finally, Baker argues that even if his term of imprisonment, license suspension, and fines were not excessive when considered separately, they are excessive when considered as a whole. He argues that the mitigating factors in this case preclude a maximum sentence. Considering Baker's character, criminal history, and the circumstances of this crime, he has failed to show that the district court abused its discretion when imposing the sentence. The district court could reasonably have concluded that a lesser sentence would depreciate the gravity of Baker's offense and the harm he caused.

## III. CONCLUSION

Because Baker has failed to show that the district court abused its discretion in imposing sentence in this case, we affirm the sentence.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS and KIDWELL, CONCUR.